**STATE OF OHIO** )
)
**COUNTY OF STARK** )

## AFFIDAVIT OF DIEBOLD, INCORPORATED

There personally appeared before the undersigned notary, Robert V. Artino, who is known to the undersigned notary and who identified himself to this notary. After having been placed under oath, the deponent stated as follows:

1. My name is Robert V. Artino and I am the Product Manager for Bullet Resistive Windows for Diebold, Incorporated. I am familiar with a lawsuit or dispute between Norment Security Group, Inc. and Diebold, Incorporated. This dispute which has become a lawsuit arises from the business relationship between Norment and Diebold where Norment was a manufacturer of and Diebold was a purchaser of windows for security purposes in pharmacies, primarily those in the CVS Pharmacy Group. Due to the internal configuration of the CVS stores which are all virtually identical, each window must be specifically manufactured to the customer's specification. For some time prior to the change in question in this litigation, Diebold had purchased specific windows of a specific design from Norment Security Group. Most importantly, each window had

to open from one side of the pharmacist's work area in order to properly serve the needs of the customer. This was known both to Diebold and to Norment Security. During the calendar year 2003 as CVS expanded its chain of stores, Diebold provided 100 purchase orders to Norment for individual windows to be shipped and delivered one at a time. The original 100 purchase orders would be for windows but five would only be built at a time and five would be ready for shipment at any time.

2. During 2004 the committed quantities changed to fifty and the same manufacturing and inventory strategy existed between the parties. During 2004, three different committed quantities of fifty windows were authorized by Diebold and in all cases Norment Security Group continued the same manufacturing and inventory procedure.

3. In mid-2004 CVS requested that its current six foot window be expanded to an eight foot wide window. No other changes were requested. The new eight foot window was manufactured in the second quarter of 2004, shipped to and approved by CVS and installed in a test location. In mid-2004 CVS agreed to change to the new eight foot window with one request: that the window be eight inches higher. This

was the only requested change to this window design. All the current drawings and lithos were complete at that time for the eight foot by three foot window which matched the sample shipped. In October 2004 Norment Security sent the new drawings for the eight foot by three foot, eight inch window. The defendant Diebold placed an order for the windows with the belief that the only change was eight inches in the height of the window. Unknown to Diebold and undetected by Diebold, Norment had drawn the window backwards. They drew it so that it would open from the right side from the building exterior and it should have opened from the left side, the same as always. I was not looking for any other changes and no one else at Diebold had authorized any changes in the window. Norment, we now know, had drawn the window backward. There was no communication between Norment and Diebold in any way about drawing, designing or building the new windows backwards or so that the opening would be from the wrong side of the window.

4. I am familiar with the business transactions between Norment and Diebold and if any significant change was ever to be made in the production of something as important and complicated as the CVS window, it would have

3

been discussed at length, numerous emails and written documents and drawings would have been prepared, and many hours spent in discussion, review and negotiation, not only within Diebold but within its customer, CVS.  None of this occurred regarding the Norment reversal because no one had any idea that Norment was going to change the design and draw the design of the window backward so that the opening for the pharmacist, inside the store, would be on the left rather than on the right where it was supposed to have been and has always been located.

    5.   I am familiar with the inside utilization by the pharmacy of its window and it would be impossible to utilize the window as manufactured by Norment.

    6.   Based on the fact that these were not the goods which were or should have been manufactured, Diebold has rejected the goods as non-conforming and is not indebted to Norment Security Group, Inc.  For the convenience of any interested party, attachment A to my affidavit is the correct set of drawings that would describe the window as it should properly have been drawn and B is the drawing sent to Diebold with the wrong, reversed opening and wrong, reversed

design of the positioning of the opening in the pharmacy window.

7. I have personal knowledge of the facts set forth in this affidavit and these facts are true and I have been placed under oath to tell the truth and the facts in this testimony are accurate.

DIEBOLD, INCORPORATED

By: *[signature]*
Robert V. Artino

Its: Product Manager for Bullet Resistive Windows

SWORN TO AND SUBSCRIBED
before me on this
the  23rd  day of  May  , 2006.

*[signature]*
Notary Public

My Commission Expires:

SUE D. LEWIS
NOTARY PUBLIC - State of Ohio
My Commission Expires Feb. 2, 2008

5





**DIEBOLD**

CALL 1-800-999-3600

131-84 SLIDING BR VISION WINDOW DRIVE-UP

## WINDOW OPTIONS
FOR DETAILS ON THE WINDOW OPTIONS, SEE APPROPRIATE CUT SHEET

☐ 121-35 MANUAL LEVEL 1 RETAIL TRANSACTION DRAWER
   SEE CUT SHEET FILE NO. 178-1951

☐ 121-36 MANUAL LEVEL 3 RETAIL TRANSACTION DRAWER
   SEE CUT SHEET FILE NO. 178-1951

☐ 121-30 ELECTRIC LEVEL 1 TRANSACTION DRAWER
   SEE CUT SHEET FILE NO. 178-1942



INTERIOR PERSPECTIVE

NOTE:
DIMENSION FOR LOCATING TRANSACTION DRAWER MAY VARY WITH UNDERCOUNTER EQUIPMENT ARRANGEMENT. POSITION SHOWN REFLECTS DRAWER LOCATED UNDER SLIDING PORTION OF WINDOW.

DIMENSIONS IN MILLIMETRES
(DIMENSIONS IN FEET-INCHES)

THIRD ANGLE PROJECTION





Ⓐ SECTION OF WALL OPENING AND WINDOW
(ROADWAY SHOWN AT SAME LEVEL AS INSIDE FLOOR LEVEL)

FILE NO. 178-1952 REV. 1




B) SECTION OF WALL OPENING AND WINDOW
(ROADWAY SHOWN 152mm (6") LOWER THAN INSIDE FLOOR LEVEL)

