IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


NORMENT SECURITY GROUP, INC.,   )
                                )
         Plaintiff,     )
                                )    CIVIL ACTION NO.
v.                          )    2:05cv1197-MHT
                                )
DIEBOLD INCORPORATED,        )
                                )
        Defendants.    )


## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANT DIEBOLD COMPANY'S MOTION FOR SUMMARY JUDGMENT

COMES NOW the Defendant, Diebold, Incorporated, ("Diebold"), a corporation, and submits the following Memorandum Brief in Support of its Motion for Summary Judgment.

## SUMMARY OF UNDISPUTED FACTS

The subject of this controversy are security windows which were ordered by Diebold to use in drive-up operations of CVS Pharmacies. The Plaintiff has filed a civil action contending that it is entitled to be paid for windows which were rejected as non-conforming goods by Diebold.

For years prior to the occurrences made the basis of the current suit, Diebold had purchased specific windows of

a specific design from Plaintiff.  (Affidavit of Robert
Artino, page 1, line 20).  Most importantly, each window had
to open from one side of the pharmacist's work area in order
to properly serve the needs of the customer.  This was known
both to Diebold and to Norment Security.(Affidavit of Robert
Artino, page 2, line 2).    During the calendar year 2003 as
CVS expanded its chain of stores, Diebold provided 100
purchase orders to Norment for individual windows.
(Affidavit of Robert Artino, page 2, line 3).  However, five
windows would only be built at a time and five would be
ready for shipment at any time. (Affidavit of Robert Artino,
page 2, line 7).    As always, the windows were designed to
open from left to right as viewed from the exterior.

     During 2004 the committed quantities changed to fifty.
(Affidavit of Robert Artino, page 2, line 10).    In mid-2004
CVS requested that its current six foot window be expanded
to an eight foot wide window.  No other changes were
requested.  (Affidavit of Robert Artino, page 2, line 16).
The new eight foot window was manufactured in the second
quarter of 2004, shipped to and approved by CVS and
installed in a test location. (Affidavit of Robert Artino,
page 2, line 18).    Also, in mid-2004 CVS agreed to change

to the new eight foot window with one request: that the window be eight inches higher. This was the only requested change to this window design. (Affidavit of Robert Artino, page 2, line 22).

In October 2004 Norment Security sent the new drawings for the eight foot by three foot, eight inch window. (Affidavit of Robert Artino, page 3, line 4). Diebold placed an order for the windows. At that time Diebold was under the belief that the only change was eight inches in the height of the window. Unknown to Diebold and undetected by Diebold, Norment had drawn the window so that it would open from the right side from the building exterior and it should have opened from the left side. (See Exhibits A and B to Affidavit of Robert Artino). Subsequently, Norment prepared fifty of these windows and two were shipped in February of 2005. (Paragraph 3 of Plaintiff's Complaint).

The window as manufactured by Norment cannot be used by CVS based on the store configuration. (Affidavit of Robert Artino, page 4, line 1). Accordingly, Diebold, pursuant to the Uniform Commercial Code, gave notice of its rejection of the non-conforming goods. (See Affidavit of Robert Artino, page 6, line 4).

## SUMMARY JUDGMENT STANDARD

Summary Judgment is not a disfavored procedural shortcut, but rather is an integral part of the Federal Rules of Civil Procedure. Celotex Corp. v. Katrett, 477 U.S. 317, 327 (1986). As the moving party for Summary Judgment, Defendants bear the initial burden of establishing that there is no genuine issue of any material fact. Id. at 323; Fed. R. Civ. P. 56(c). Defendants can meet this initial burden by either (1) submitting affirmative evidence negating an essential element of the non-moving party's claim, or (2) demonstrating that the non-moving party's evidence is in itself insufficient to establish an essential element of the claim advanced. River v. Great Dane Trailers, Inc., 816 F. Supp. 1525, 1528 (M.D. 1993) (citing Celotex, 477 U.S. at 322); see also, Goree v. Winnebago Industries, Inc. 958 F. 2d 1537, 1539 (11th Cir. 1992) (summary judgment is appropriate against a party who fails to make a sufficient showing to establish the existence of essential elements of claims on which she bears the burden of proof at trial).

After a Defendant satisfies this initial burden, the burden shifts to the non-moving party, who must then set

forth specific facts showing that there is a genuine issue

for trial. Fed. R. Civ. P. 56(e). A "genuine" dispute

requires more than suspicion. That is, the non-moving party

must establish that a reasonable jury could, on the basis of

the proffered proof, return a verdict for the non-moving

party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

(1986); <u>Avirgan v. Hull</u>, 932 F. 2d 1572, 1577 (11th Cir.

1991). The test to determine if the non-moving party has

established a genuine issue for trial is whether it presents

evidence for which a jury might return a verdict in his

favor. <u>Anderson</u>, 477 U.S. at 257.

Thus, to defeat a motion for summary judgment, the non-

moving party must establish a trial-worthy issue by

presenting enough competent evidence to enable a finding

favorable to the non-moving party. <u>Dominick v. Dixie</u>

<u>National Life Ins. Co.</u>, 809 F. 2d 1559 (11th Cir. 1989).

### ARGUMENT

Alabama has adopted an enacted the UCC, codifying it at

Title VII, <u>Code of Alabama</u>, (1975). In doing so it

abrogated causes of action for the sale of goods premised

upon common law contract theories. <u>Intercorp, Inc. v.</u>

<u>Penzoil Company</u>, 877 F.2d 1524 (11th Cir. 1999). Article II

of the UCC, "Sales" is found at §§7-2-101 through 7-2-725 and applies to the sell of goods. Id. at 1527. The Code defines the term "goods" to mean "all things (including specially manufactured goods) which are moveable at the time of identification to the contract for sale." Alabama Code, §7-2-105(1). The windows which are the subject of the current litigation clearly fall within the definition of goods as provided in the UCC. Thus, the rights and duties of the parties in the current litigation are accordingly governed by the UCC as codified at Title VII of the Alabama Code.

I.   **PLAINTIFF'S ALLEGATIONS OF BREACH OF CONTRACT FAIL AS A MATTER OF LAW**

A.   **Diebold rightfully rejected the goods in question as non-conforming pursuant to §7-2-602.**

Alabama law is clear that if goods do not conform to a contract, the buyer may reject them. See Huntsville Hosp. v. Mortara Instrument, 57 F.3rd 1043 (11th Cir. 1995). In this regard, §7-2-602 of the Alabama Code 1975 provides:

    (1)  Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller.
    (2)  Subject to the provisions of Sections 7-2-603 and 7-2-604 on rejected goods:

     (a)   After rejection any exercise of ownership by the buyer with respect to any commercial unit is wrongful as against the seller; and

     (b)   If the buyer has before rejection taken physical possession of goods in which he does not have a security interest under the provisions of this article (subsection (3) of Section 7-2-711), he is under a duty after rejection to hold them with reasonable care at the seller's disposition for a time sufficient to permit the seller to remove them; but

     (c)   The buyer has no further obligations with regard to goods rightfully rejected.

 (3)   The seller's rights with respect to goods wrongfully rejected are governed by the provisions of this article on seller's remedies in general (Section 7-2-203).

The provisions of these sections are clear and unambiguous. The Courts which have interpreted this Section have strictly enforced its terms. Specifically, <u>Huntsville Hosp. v. Mortara Instrument</u>, 57 F.3rd 1043 (11th Cir. 1995), sheds much light on the duty of a purchaser of non-conforming goods. In <u>Mortara</u>, Huntsville Hospital purchased an electrocardiogram management system manufactured by Mortara. <u>Id</u>. at 1045. Shortly after the installation of the system, Huntsville Hospital began experiencing problems with the system. Within a six (6) month period the hospital notified Mortara that it wished to exercise its contractual option to return the equipment and software for a complete refund. <u>Id</u>. Mortara responded by demanding several

considerations for the return of the system, including a re-

stocking fee and a charge for the use of the system. Id.

Despite being informed that the system was ready for pick-

up, Mortara did not retrieve the system or refund any of the

purchase price to the hospital. Id.

Subsequently, Huntsville Hospital filed suit seeking a

refund of the system's purchase price.  The District Court

concluded that under Alabama Code §§7-2-602 and 7-2-604 that

the hospital was entitled to a refund of the system's

purchase price.  The 11th Circuit Court of Appeals upheld

the District Court's decision, finding that the hospital

properly rejected the system by notifying Mortara that it

was electing to exercise its option to return it and making

the system available for pick-up and was under no further

obligation to physically return the system in order to be

entitled to a refund. Id. at 1047.

Just as in Mortara, in the present case Diebold

correctly exercised its right to reject non-conforming goods

under §7-2-602.  The windows were non-conforming and of no

use to Diebold because they opened from the right side

viewing it from the building exterior instead of the left

side as required by the configuration of its customer's

stores, CVS.   (See Affidavit of Robert Artino, page 3, line

10).    Thereafter, Diebold gave timely notice of its

rejection of the non-conforming goods.(See Affidavit of

Robert Artino, page 6, line 14).   Thus, just as in <u>Mortara</u>,

Diebold is under no further obligation to Plaintiff.

B.    **Assuming *arguendo* that this court finds that Diebold accepted the goods in question, the acceptance was properly revoked in accordance with §7-2-608.**

It is anticipated that Plaintiff will argue that

Diebold accepted the windows in question when it took

possession of the first two windows which were shipped in

February of 2005.   Assuming *arguendo* that this Court finds

merit with such an argument, it is clear that any alleged

acceptance of the windows in question was properly revocated

pursuant to §7-2-608 and that Diebold maintains the same

rights with regard to the windows as if they had been

rejected.   See §7-2-608(3), <u>Alabama Code</u> (1975).    Section

7-2-608 provides as follows:

(1)    The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he ha accepted it:
      (a)   On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or
      (b)   Without discovery of such nonconformity if his acceptance was reasonably induced either by

the difficulty of discovery before acceptance
or by the seller's assurances.

(2)  Revocation of acceptance must occur within a
reasonable time after the buyer discovers or
should have discovered the ground for it and
before any substantial change in condition of the
goods which is not caused by their own defects.
It is not effective until the buyer notifies the
seller of it.

(3)  A buyer who so revokes has the same rights and
duties with regard to the goods involved as if he
had rejected them.

It is clear that Diebold met all the requirements for

revocation under this Section.  As discussed in the

Affidavit of Robert Artino, the value of the windows to

Diebold is substantially impaired by the non-conformity of

the windows to the needs of its customer, CVS.  As stated by

Mr. Artino, it would be impossible to utilize the windows in

question as manufactured by the Plaintiff.  Also, as stated

in the Affidavit of Mr. Artino, Diebold had not authorized

any change in regards to the window opening and once the

discovery was made that the windows were non-conforming in

that the windows were manufactured essentially backward,

prompt notice was given to the Plaintiff.

II.    BASED ON THE PRIOR COURSE OF DEALINGS BETWEEN THE
       PLAINTIFF AND DIEBOLD, IT IS CLEAR THAT UNDER NO
       CIRCUMSTANCES DOES DIEBOLD OWE ANY OBLIGATION TO
       THE PLAINTIFF FOR ANY WINDOWS MANUFACTURED IN
       EXCESS OF THE FIRST LOT OF FIVE.


Despite Plaintiff's contention, even if this Court

finds that Diebold failed to properly reject or revoke the

goods in question as non-conforming, Diebold's contractual

liability would only extend to the first five (5) windows

manufactured based on the course of dealing between Diebold

and the Plaintiff.

Alabama Code (1975) §7-1-205(1) states, "A course of

dealing is a sequence of previous conduct between the

parties to a particular transaction which is fairly to be

regarded as establishing a common basis of understanding for

interpreting their expressions and other conduct."   A

course of dealing is "relevant not only to the

interpretation of express contract terms, but may [itself]

constitute contract terms." Marshall Durbin Farms, Inc. v.

Fuller, 794 So.2d 320 (Ala. 2000) citing James J. White &

Robert S. Summers, Handbook of the Law Under the Uniform

Commercial Code § 3-3, at 98 (2d ed. 1980).  Indeed, it "may

not only supplement or qualify express terms, but in

appropriate circumstances, may even override express terms."

11

Over the course of several years, Plaintiff and Diebold established a course of dealing whereby Diebold would authorize the procurement of components and commit to purchase fifty (50) windows at a time and the Plaintiff would build the windows in lots of five (5) with five (5) prepared to ship at all times.  (Affidavit of Robert Artino, page 2, line 7). At no time has Diebold authorized the Plaintiff to build fifty (50) windows in a single lot.  Had Plaintiff not veered from this agreed upon practice only five (5) windows would have been manufactured prior to Plaintiff receiving notice from Diebold of the error in manufacturing.  Thus, Diebold should bear no responsibility for the latter forty-five (45) windows under any scenario.

## CONCLUSION

For the foregoing reasons, the Defendant, Diebold, Incorporated, respectfully requests that this Court grant Final Summary Judgment as to Plaintiff's claim and pursuant to Federal Rules of Civil Procedure 54(b), make the judgment final as there is no just reason for delay.

Respectfully submitted,

s/James R. Shaw
James R. Shaw
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Hwy 280 South, Suite 200
Birmingham, AL 35223
(205) 251-1193
(205) 251-1256
jrs@hfsllp.com
Alabama Bar No.: 7523-H49J
Attorneys for Defendant


## CERTIFICATE OF SERVICE

I certify that on May 24, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Marvin H. Campbell
P. O. Box 4979
Montgomery, AL 36103
(334) 263-7591
mhcfirm@aol.com
Alabama Bar No.: ASB6616-A50M

Attorney for Plaintiff

Respectfully submitted,

s/James R. Shaw
James R. Shaw
HUIE, FERNAMBUCQ & STEWART, LLP
Three Protective Center
2801 Hwy 280 South, Suite 200
Birmingham, AL 35223
(205) 251-1193
(205) 251-1256
jrs@hfsllp.com
Alabama Bar No.: 7523-H49J
Attorneys for Defendant